******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DOUGLAS C., JR.*
## (SC 20456)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Ecker and Keller, Js.

### *Syllabus*

A criminal information is duplicitous when it charges a defendant in a single count with two or more distinct and separate criminal offenses, thereby implicating the defendant's constitutional right to a unanimous jury verdict.

Convicted of five counts of the crime of risk of injury to a child in connection with the sexual abuse of five victims, including N, S, and T, the defendant appealed to the Appellate Court. The defendant allegedly had sexual and indecent contact with the intimate parts of the victims, all of whom were under sixteen years of age at the time, on multiple occasions over the course of several years, while at the defendant's home. Each of the five risk of injury counts pertained to a different child. At the defendant's trial, N and T testified regarding the defendant's frequent touching of their breasts, and S testified about a single evening during which the defendant touched her vagina multiple times and made contact with her breasts. During the defendant's trial, defense counsel requested that the court provide a specific unanimity jury instruction on each of the risk of injury counts, claiming that the evidence demonstrated that there were discrete incidents of abuse and not a continuing course of conduct, which could cause the jurors to reach a guilty verdict on a particular count on the basis of findings as to different incidents of abuse. The trial court nevertheless denied the request for a unanimity instruction with respect to the counts pertaining to N, S, and T. On appeal to the Appellate Court from the judgment of conviction, the defendant claimed, inter alia, that the risk of injury counts pertaining to N, S, and T were duplicitous insofar as each count charged him with a single violation of the risk of injury to a child statute (§ 53-21 (a) (2)), even though there was evidence that he had engaged in multiple, separate instances of unlawful conduct, and that the trial court, therefore, improperly had declined defense counsel's request for a specific unanimity instruction as to those counts, in violation of his right to a unanimous jury verdict on each count. The Appellate Court affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Held*:

1. This court's review of federal case law concerning the scope of the unanimity requirement led it to clarify that a duplicitous information may raise two distinct and separate kinds of unanimity issues, that is, unanimity as to the elements of a crime and unanimity as to instances of conduct, the defendant's claims in the present case related to unanimity as to instances of conduct, and this court adopted the approach utilized by a majority of the federal courts of appeals for determining whether a criminal information gives rise to unanimity claims based on instances of unlawful conduct:

    The issue of unanimity as to the elements of a crime arises when a defendant is charged in a single count with having violated multiple statutory provisions, subsections, or clauses, and, when such an issue is presented, a court must determine whether the statutory language creates multiple elements, each of which the government must charge as a separate offense, or alternative means of committing the element at issue.

    The issue of unanimity as to instances of conduct arises when a defendant is charged in a single count with having violated a single statutory provision, subsection, or clause on multiple, separate occasions, and the dispute centers on whether, in light of the statutory language, the defendant could be convicted of a single count of violating a statute based on evidence of multiple, separate occurrences of the prohibited act or acts.

In the present case, the defendant claimed that the counts of the information pertaining to N, S, and T violated his right to unanimity as to instances of conduct, insofar as each count was premised on multiple, separate instances of conduct and the trial court had declined to provide a specific unanimity instruction as to those counts.

This court adopted the following multipart test, employed by federal courts, for claims of unanimity as to instances of conduct, to determine whether a defendant's constitutional right to jury unanimity was violated by the trial court's failure to give a specific unanimity instruction.

First, considering the allegations in the information and the evidence admitted at trial, does a single count charge the defendant with violating a single statute in multiple, separate instances?

Second, if so, does each instance of conduct establish a separate violation of the statute? If the statute contemplates criminalizing a continuing course of conduct, then each instance of conduct is not a separate violation of the statute but a single, continuing violation. To determine whether the statute contemplates criminalizing a continuing course of conduct, well established principles of statutory interpretation should be employed. Only if each instance of conduct constitutes a separate violation of the statute is a count duplicitous.

Third, if the count is duplicitous, was the duplicity cured by a bill of particulars or a specific unanimity instruction? If yes, then there is no unanimity issue. If not, then a duplicitous count violates a defendant's right to jury unanimity but reversal of the defendant's conviction is required only if the defendant establishes prejudice.

In light of this court's adoption of the foregoing test for claims of unanimity as to instances of conduct, to the extent that this court and the Appellate Court in previous cases have failed to heed the relevant federal precedent and to distinguish between unanimity as to the elements of a crime and unanimity as to instances of conduct, this court overruled those prior cases.

2. Applying the newly adopted test for unanimity as to instances of conduct, this court concluded that the counts of the information pertaining to N, S, and T were not duplicitous and that the trial court's failure to grant defense counsel's request for a specific unanimity instruction as to those counts, therefore, did not violate the defendant's constitutional right to jury unanimity, and, accordingly, affirmed the Appellate Court's judgment:

a. The counts of risk of injury to a child pertaining to N and T, which were based on similar testimony about the defendant's touching of N's and T's intimate parts, were not duplicitous:

Under the first prong of the multipart test, this court concluded that the counts pertaining to N and T were premised on multiple, separate incidents of conduct and not a single incident, insofar as there was testimony that the defendant frequently touched N's and T's breasts in a sexual and indecent manner during N's weekly visits to the defendant's residence and whenever T was at the residence.

Under the second prong, regarding whether each incident could establish an independent violation of § 53-21 (a) (2), this court concluded that the state had the discretion to charge the defendant with having violated § 53-21 (a) (2) as to each incident of conduct or to present those incidents to the jury as a continuing course of conduct, because, although the plain language of the statute was ambiguous as to whether the multiple, separate instances of conduct at issue were separate and distinct violations of § 53-21 (a) (2), nothing in that statute's legislative history suggested that the legislature intended to abrogate this court's prior case law interpreting § 53-21 to allow a defendant to be charged under a continuing course of conduct theory.

Moreover, not only does § 53-21 (a) (2) contemplate criminalizing a continuing course of conduct, but, in the present case, the state charged the defendant under such a theory, alleging in the counts pertaining to N and T that the defendant had contact with their intimate parts in a sexual and indecent manner over a period of time, rather than charging the defendant with a single instance of contact as to each child on a

single date, and the jury reasonably could have found that the multiple, separate incidents of conduct constituted a continuing course of conduct on the basis of the evidence presented at trial, especially the testimony of N, T, and the other victims.

b. The count of risk of injury to a child pertaining to S, which was premised on multiple acts of sexual and indecent contact with S's vagina and breasts during a single evening, was not duplicitous:

Although it may be difficult to determine whether a single count is premised on multiple acts, each of which is committed in the course of a single criminal episode of relatively brief, temporal duration, and thus constitutes alternative means of committing the elements at issue, or whether the count is premised on multiple, separate and distinct acts, each of which could constitute a separate statutory violation, in the present case, the jury reasonably could have interpreted the evidence as demonstrating that the defendant's acts toward S constituted either a single criminal episode of relatively brief, temporal duration or a continuing course of conduct in that the acts occurred multiple times during a single evening, involved a single victim and furthered a single, continuing objective to touch S in a sexual and indecent manner.

(*Two justices concurring separately*)

Argued November 15, 2021—officially released December 13, 2022**

*Procedural History*

Substitute information charging the defendant with five counts of the crime of risk of injury to a child and one count of the crime of sexual assault in the second degree, brought to the Superior Court in the judicial district of New London and tried to the jury before *Jongbloed, J.*; thereafter, the court granted the defendant's motion for a judgment of acquittal as to the charge of sexual assault in the second degree; verdict and judgment of guilty of five counts of risk of injury to a child, from which the defendant appealed to the Appellate Court, *Alvord*, *Prescott* and *Sullivan, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Dina S. Fisher*, assigned counsel, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, former state's attorney, and *Theresa Ferryman*, senior assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. It is well established that a criminal information is duplicitous[1] when it charges the defendant in a single count with two or more distinct and separate criminal offenses, thereby implicating the defendant's constitutional right to jury unanimity. What is not clear, and what we must decide in this certified appeal, is whether a defendant charged in a single count with a single statutory violation faces a duplicitous information when the evidence at trial supports multiple, separate incidents of conduct, each of which could independently establish a violation of the charged statute. We conclude as a matter of federal law that such a count is duplicitous and, if not cured by a bill of particulars or a specific unanimity instruction, violates the defendant's constitutional right to jury unanimity, thereby requiring reversal of the defendant's conviction if this duplicity creates the risk that the conviction will result from different jurors concluding that the defendant committed different criminal acts.

The defendant, Douglas C., Jr., appeals from the Appellate Court's judgment upholding his conviction, after a jury trial, of five counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] The defendant claims that counts one, five, and six were duplicitous because each count charged him with a single violation of § 53-21 (a) (2), despite evidence at trial of multiple, separate incidents of conduct. As a result, he argues that the trial court improperly declined to give the jury a specific unanimity instruction as to these counts. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts. The defendant had sexual and indecent contact with the intimate parts of five female children—N, C, O, S and T—on various dates while they were under the age of sixteen. *State* v. *Douglas C.*, 195 Conn. App. 728, 731, 227 A.3d 532 (2020). The five children would often be in the defendant's presence at the numerous gatherings he had at his home in Lisbon. Id. At these gatherings, the defendant would serve them alcohol, although they were under the legal age to consume alcoholic beverages. Id., 731–32. The children also would be in the defendant's presence when babysitting his own children at his home or on other occasions. Id. When the defendant was in the company of the children, he had contact with their intimate parts on multiple occasions. Id.

Relevant to this appeal, on multiple occasions between 2005 and January 8, 2007, the defendant touched N's breasts. This occurred with frequency when N was at the defendant's residence, which occurred every weekend for years. Because of the frequency of this contact, N could not recall specific dates or inci-

dents, with the exception of the first time the defendant ever touched her breasts—in a car after getting fast food—and the one and only time that the defendant touched her vagina—when he performed oral sex on her—although she could not recall the dates with any specificity. Additionally, during a single evening on a date between 2005 and September 15, 2008, the defendant touched S's vagina multiple times and made contact with her breasts. Specifically, after the defendant provided her with alcohol, S was running up and down a hill in the defendant's backyard. She fell twice, and, each time, as the defendant helped S to her feet, he touched her intimate parts—the first time he helped her up, he touched her vagina, and the second time he helped her up, he grabbed her breasts. After the defendant's wife called S and the defendant to come inside, the defendant provided S with more alcohol and sent her to bed. A few minutes later, the defendant entered the room where S was sleeping, lied down in bed with her, and touched her vagina twice. Finally, on multiple occasions between 2005 through October 23, 2007, the defendant touched T's breasts. This occurred with such regularity that T could not recall specific dates or incidents, with the exception of one specific incident. Specifically, she was present when the defendant performed oral sex on N, and, during this incident, the defendant touched her breasts, but she could not recall the date of that incident.

The five minor victims did not disclose the defendant's inappropriate contact with their intimate parts until years later. The defendant subsequently was arrested and charged with five separate counts of risk of injury to a child in violation of § 53-21 (a) (2), with each count involving a different child. In addition, he was charged with one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3), in relation to N, but the trial court granted the defendant's motion for a judgment of acquittal as to this count.[3]

At trial, the state offered the testimony of N, S and T, as detailed previously, to establish that, on multiple occasions, the defendant had contact with their intimate parts. As a result, defense counsel requested that the court provide a specific unanimity instruction to the jury on counts one, three, four, five, and six. He argued that the evidence showed there were discrete incidents, not a continuing course of conduct, and thus "the danger that arises if the jury isn't instructed that [it has] to be unanimous on at least one of those events for each of the complainants with respect to each count is that we could imagine, easily imagine, a situation in which a certain number of jurors may believe beyond a reasonable doubt that, you know, one of those described events happened, and other jurors may not believe that that particular event happened, whereas another set of jurors may believe that a second event,

as described by the complaining witnesses, happened beyond a reasonable doubt but doesn't agree with the first, you know, three jurors as to one of the other events." The prosecutor agreed that a specific unanimity instruction should be given as to count four, which charged the defendant with both having had contact with the intimate parts of O and subjecting O to contact with his intimate parts but objected to the court's giving a specific unanimity instruction on the other counts because there was testimony that "this happened all the time," every time the five children saw the defendant. The court agreed that it would provide a specific unanimity instruction as to count four but not as to the other counts because they did not involve multiple statutory subsections.

During closing argument, regarding multiple incidents of the defendant's having touched each child's intimate parts, the prosecutor argued that, "[b]ecause of the nature of the allegations here—the state is permitted to charge in this fashion—it is impossible for the state, the state contends, to prove individual episodes through the course of this period of time—so that, if you were to consider the evidence and decide that an incident of sexual contact occurred within this time period, and you're convinced beyond a reasonable doubt that at least one episode occurred, you would find the defendant guilty. . . . This is not a case that involves an episode that happened one evening with crime tape around it. It's about a period of time in which the defendant had access to these young women and in which he had sexual contact with them. That's the state's contention." More specifically, the prosecutor argued that the children had testified that this touching occurred regularly any time they were with the defendant.

In response, defense counsel, in closing, argued that the children had fabricated their testimony and focused also on whether there was reasonable doubt that the children were under the age of sixteen at the time of the alleged incidents, as required by § 53-21 (a) (2). In rebuttal, the prosecutor again emphasized that this conduct did not occur on a single occasion but that the defendant continuously engaged in this inappropriate touching "weekend after weekend . . . ."

When instructing the jury, the trial court included only a general unanimity charge.[4] The jury returned a guilty verdict on counts one, three, four, five, and six. The court imposed a total effective sentence of eighteen years of incarceration, execution suspended after ten years, followed by ten years of probation.

The defendant appealed to the Appellate Court, claiming that he was deprived of his constitutional right to a unanimous jury verdict because the trial court improperly denied his request for a specific unanimity instruction as to counts one, three, five, and six.[5] *State* v. *Douglas C.*, supra, 195 Conn. App. 745. Addressing

this claim, the Appellate Court held that, under governing case law from this state, a specific unanimity instruction was not required because unanimity concerns arise only when the state charges the defendant in a single count with having violated multiple statutes, statutory subsections, or statutory clauses. Id., 752. The Appellate Court stated that unanimity issues do not arise when a defendant is charged in a single count with violating a single statute, statutory subsection, or statutory clause on multiple occasions. Id., 754. As a result, the Appellate Court held that, because the state charged the defendant under each count with having violated only a single statutory subsection, the defendant's right to jury unanimity was not violated. The defendant sought certification to appeal to this court, which we granted.

The defendant claims that counts one, five, and six were duplicitous because each count charged him with a single violation of § 53-21 (a) (2) but that there was evidence presented of multiple, distinct acts. According to the defendant, because the counts at issue were premised on these multiple acts, only the conceptual distinction portion of the test for unanimity announced in *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), which followed the test detailed in *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977), applies to his claim.[6] Under this modified version of the *Gipson* test, the defendant argues, counts one, five, and six are duplicitous. Although we agree with the defendant that claims of unanimity as to multiple, separate instances of conduct, which the defendant refers to as multiple acts, are analyzed under a different test than claims of unanimity as to elements, we disagree with both the test he urges this court to apply and the outcome under the proper test.

I

The defendant argues that his right to jury unanimity was violated because each risk of injury count was premised on multiple, separate incidents of criminal conduct. In making this argument, he asserts that a different standard applies to his claim than to unanimity claims that involve a single count alleging the violation of multiple statutes or statutory subsections. We thus begin by determining whether there are different kinds of unanimity claims and, if so, the legal test applicable to the defendant's unanimity claim. We conclude that there are two distinct kinds of unanimity claims—unanimity as to elements and unanimity as to instances of conduct—and that different tests apply to these claims.

In determining the proper test for analyzing the defendant's claim, it is useful to begin with a review of the definition of a "duplicitous" count and the principles underpinning the federal right to a unanimous jury verdict. From there, we synthesize the case law from the federal courts of appeals, which recognizes that duplicitous indictments may implicate unanimity principles

in two distinct ways: unanimity as to elements and unanimity as to instances of conduct. Because of the unique nature of these two unanimity issues, federal courts have applied different tests to these distinct circumstances to determine whether a defendant's right to jury unanimity has been violated. Until today, courts of this state have not recognized this distinction. We now conform our case law to this well established federal jurisprudence.

A

"Duplicity occurs when two or more offenses are charged in a single count of the accusatory instrument. . . . [A] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses. . . . Rather, such a count is . . . duplicitous [only when] the policy considerations underlying the doctrine are implicated. . . . These [considerations] include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." (Citations omitted; internal quotation marks omitted.) *State* v. *Saraceno*, 15 Conn. App. 222, 228–29, 545 A.2d 1116, cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988); see also *United States* v. *Jaynes*, 75 F.3d 1493, 1502 n.7 (10th Cir. 1996); *United States* v. *Browning, Inc.*, 572 F.2d 720, 725 (10th Cir.), cert. denied, 439 U.S. 822, 99 S. Ct. 88, 58 L. Ed. 2d 114 (1978). In the present case, the defendant argues only that the allegedly duplicitous counts implicate his right to a unanimous jury verdict. A duplicitous information, however, may be cured either by a bill of particulars or a specific unanimity instruction. See, e.g., *State* v. *Conley*, 31 Conn. App. 548, 558, 627 A.2d 436 (when count of information is duplicitous, "defendant's recourse is to file a motion for a bill of particulars"), cert. denied, 227 Conn. 907, 632 A.2d 696 (1993); *State* v. *Markham*, 12 Conn. App. 306, 311, 530 A.2d 660 (1987) (same); see also *United States* v. *Newson*, 534 Fed. Appx. 604, 604–605 (9th Cir. 2013) (specific unanimity instruction can cure juror confusion as to which crime defendant is alleged to have committed); *United States* v. *White*, 766 F. Supp. 873, 893 (E.D. Wn. 1991) (bill of particulars rendered moot defendant's claim that count of indictment was duplicitous). Only in the absence of such remedies does a duplicitous count violate a defendant's right to jury unanimity.[7] See part I B of this opinion. The defendant argues that, because the information was duplicitous, the trial court erroneously denied his request for both a bill of particulars and a specific unanimity instruction and that this error resulted in a verdict that

violated his right to jury unanimity. Although we generally review the denial of a motion for a bill of particulars for abuse of discretion; see, e.g., *State* v. *Vumback*, 263 Conn. 215, 221, 819 A.2d 250 (2003); because this claim is premised on an alleged infringement of the defendant's constitutional rights, our review is plenary. See, e.g., *State* v. *Jodi D.*, 340 Conn. 463, 476, 264 A.3d 509 (2021) (constitutional issue presents legal question subject to de novo review); see also *United States* v. *Newell*, 658 F.3d 1, 20 (1st Cir.), cert. denied, 565 U.S. 955, 132 S. Ct. 430, 181 L. Ed. 2d 280 (2011), and cert. denied sub nom. *Parisi* v. *United States*, 565 U.S. 1137, 132 S. Ct. 1069, 181 L. Ed. 2d 783 (2012).

The United States Supreme Court recently detailed the history of the federal constitutional right to jury unanimity: "The [s]ixth [a]mendment promises that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the [s]tate and district wherein the crime shall have been committed, which district shall have been previously ascertained by law.' The [a]mendment goes on to preserve other rights for criminal defendants but says nothing else about what a 'trial by an impartial jury' entails." *Ramos* v. *Louisiana*, U.S. , 140 S. Ct. 1390, 1395, 206 L. Ed. 2d 583 (2020). Although the sixth amendment says nothing about the need for a unanimous verdict, the court has noted that "[t]he text and structure of the [c]onstitution clearly suggest that the term 'trial by an impartial jury' carried with it some meaning about the content and requirements of a jury trial." (Emphasis omitted.) Id. "One of these requirements was unanimity. Wherever we might look to determine what the term 'trial by an impartial jury trial' meant at the time of the [s]ixth [a]mendment's adoption— whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward—the answer is unmistakable. A jury must reach a unanimous verdict in order to convict." Id.[8]

This constitutional requirement has come to apply equally to state and federal criminal trials. See id., 1397. Specifically, in *Duncan* v. *Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968), the United States Supreme Court held that the right to a trial by jury guaranteed by the sixth amendment applies to "serious criminal cases" tried in state court.[9] Id., 156. Subsequently, in *Burch* v. *Louisiana*, 441 U.S. 130, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979), the court held that the sixth amendment requires a six person jury in state court to be unanimous before finding a defendant guilty of a "nonpetty offense . . . ." Id., 134. Most recently, in *Ramos*, the court clarified that the sixth amendment requires a jury in a state court to be unanimous before finding a criminal defendant guilty of a "serious offense."[10] *Ramos* v. *Louisiana*, supra, 140 S. Ct. 1394; see *Edwards* v. *Vannoy*, U.S , 141 S. Ct. 1547, 1551, 209 L. Ed. 2d 651 (2021). Although there has been

a good deal of litigation involving what constitutes a "serious criminal case," a "nonpetty offense" and a "serious offense," it is not disputed that this case qualifies and that the right to jury unanimity applies.

B

Although the federal constitutional right to jury unanimity clearly applies in both state and federal courts, what is less clear is precisely *what* the jury must be unanimous about. Detailing the scope of the unanimity requirement, the United States Supreme Court has explained that a jury "cannot convict unless it unanimously finds that the [g]overnment has proved each element" of the offense charged. *Richardson* v. *United States*, 526 U.S. 813, 817, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999). Nevertheless, the court has recognized that "different jurors may be persuaded by different pieces of evidence, even when they agree [on] the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues [that] underlie the verdict." (Internal quotation marks omitted.) *Schad* v. *Arizona*, 501 U.S. 624, 631–32, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (opinion announcing judgment). In other words, a jury must agree "on the principal facts underlying its verdict—what courts have tended to call the elements of the offense. But that requirement does not extend to subsidiary facts—what the [Supreme] Court has called 'brute facts.' " *United States* v. *Lee*, 317 F.3d 26, 36 (1st Cir.), cert. denied, 538 U.S. 1048, 123 S. Ct. 2112, 155 L. Ed. 2d 1089 (2003). "[I]n the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even [when] an indictment alleges numerous factual bases for criminal liability." (Internal quotation marks omitted.) *United States* v. *Holley*, 942 F.2d 916, 925–26 (5th Cir. 1991), quoting *United States* v. *Beros*, 833 F.2d 455, 460 (3d Cir. 1987).

The court has clarified that alternative means of committing a crime constitute underlying brute facts: "[F]or example, [the court has] sustained a murder conviction against the challenge that the indictment on which the verdict was returned was duplicitous in charging that death occurred through both shooting and drowning. In holding that the [g]overnment was not required to make the charge in the alternative . . . [the court] explained that it was immaterial whether death was caused by one means or the other. . . . This fundamental proposition is [also] embodied in Federal Rule of Criminal Procedure 7 (c) (1), which provides that [i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." (Citations omitted; internal quotation marks omitted.) *Schad* v. *Arizona*, supra, 501 U.S. 631 (opinion announcing judgment).

A majority of unanimity cases involve this "crucial

distinction . . . between a fact that is an element of the crime and one that is 'but the means' to the commission of an element." *United States* v. *Verrecchia*, 196 F.3d 294, 299 (1st Cir. 1999). The line between means and element may be unclear at times, and courts have divided over the appropriate test to apply to distinguish between means and elements. See *Schad* v. *Arizona*, supra, 501 U.S. 641–42 (opinion announcing judgment). Indeed, *Ramos*, *Schad* and *Richardson* all involved indictments that charged a defendant in a single count with violating multiple statutory provisions, subsections, or clauses, and thus the court had to determine whether the statutory provisions, subsections, or clauses constituted elements or alternative means. As a result, those cases raised unanimity as to elements claims— unlike the present case, which involves unanimity as to instances of conduct. Although those cases did not raise claims of unanimity as to instances of conduct, the court implicitly acknowledged that, if an indictment charged a defendant in a single count with violating a single statutory provision, subsection, or clause on multiple occasions, the jury must agree unanimously as to which instance of conduct the defendant committed.

For example, in *Schad*, the Supreme Court rejected a challenge to Arizona's first degree murder statute, which permitted conviction on a theory of either premeditation or felony murder. See id., 627 (opinion announcing judgment). In his concurrence, which was necessary to the court's judgment, Justice Scalia warned that "[w]e would not permit . . . an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday . . . ." Id., 651 (Scalia, J., concurring in part and concurring in the judgment). Subsequently, the majority in *Richardson* specifically cited Justice Scalia's warning in *Schad* in support of the proposition that "the [c]onstitution itself limits a [s]tate's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least [when] that definition risks serious unfairness and lacks support in history or tradition." *Richardson* v. *United States*, supra, 526 U.S. 820.

Relying on these admonitions, a majority of federal courts of appeals have recognized that a duplicitous indictment may raise two distinct and separate kinds of unanimity issues: (1) unanimity as to a crime's elements, which was the kind of unanimity claim raised in *Ramos*, *Schad* and *Richardson*; and (2) unanimity as to instances of conduct, also known as a multiple acts or multiple offense claim, which was the kind of claim the court implicitly acknowledged in *Schad* and *Richardson*. These courts have explained that this first kind of unanimity claim involves the question of "when is a disputed fact—e.g., whether the crime occurred on a Monday or a Tuesday, with a knife or a gun, against this or that victim—one that the jury must unanimously agree [on], and when is it merely dispensable detail

[i.e., element vs. means]? And the second [involves the question]: when is a defendant's conduct one violation of a statute, and when is it many?" *United States* v. *Newell*, supra, 658 F.3d 20.

The federal courts of appeals not only have recognized that a duplicitous indictment may raise these two distinct unanimity issues, but they also have recognized that a claim of unanimity as to elements implicates different concerns than a claim of unanimity as to instances of conduct. Specifically, for claims of unanimity as to elements, unanimity concerns arise from the statutory language or scheme at issue. See *Schad* v. *Arizona*, supra, 501 U.S. 631–32 (opinion announcing judgment). The concern in those cases is whether the statutory language creates multiple elements, each of which the government must charge as a separate offense, or alternative means of committing an element. In contrast, for claims of unanimity as to instances, unanimity concerns arise from the evidence of the defendant's conduct, viewed in light of the statutory language. In the latter situation, there is no dispute over whether the defendant violated multiple subsections of a statute, each of which constitutes a separate offense; rather, the dispute is over whether the defendant may be convicted of a single count of violating a statute based on evidence of multiple, separate occurrences of the prohibited act or acts. See *United States* v. *Correa-Ventura*, 6 F.3d 1070, 1080 (5th Cir. 1993) (discussing difference between unanimity as to elements cases and unanimity as to instances cases). For example, a claim of unanimity as to instances of conduct may arise in a case in which the defendant is charged with a single count of assault but there was evidence presented to the jury that the defendant assaulted the victim three separate times on three separate dates. In such a case, the concern arises that the jury may have agreed that the defendant committed assault but may not have agreed which assault the defendant committed. Because of the distinct nature of these two unanimity claims, federal courts have applied a different test to claims of unanimity as to elements than to claims of unanimity as to instances.

In the present case, the defendant argues that counts one, five, and six were duplicitous because each was premised on multiple, separate instances of conduct, and thus the lack of a bill of particulars or a specific unanimity instruction led to a verdict that violated his right to jury unanimity. In other words, he claims that these counts violated his right to unanimity as to instances of conduct, not his right to unanimity as to elements. As we will discuss in detail, federal courts apply a multipart test to claims of unanimity as to instances of conduct to determine whether the defendant's constitutional right to jury unanimity was violated.

First, a court must determine whether a single count

is premised on multiple, separate instances of conduct. If the answer is yes, then the court next must determine if each instance could establish a separate violation of the statute at issue. At times, it may be easy to make this second determination. That is because, "[i]n some cases the standard for individuating crimes is obvious—we count murders, for instance, by counting bodies. But in other cases, determining how many crimes were committed is much less clear." *United States* v. *Newell,* supra, 658 F.3d 23–24. For example, it may be difficult to determine whether a single count is premised on multiple acts, each of which is committed in the course of a single criminal episode of relatively brief, temporal duration, and thus constitutes alternative means of committing the elements at issue, or whether it is premised on multiple, separate and distinct acts, each of which could constitute a separate statutory violation. In these more difficult cases, courts have examined the statute's language, its legislative history, and case law regarding similar statutes to help determine whether the charge is duplicitous. See id.; *United States* v. *Correa-Ventura,* supra, 6 F.3d 1082.

In examining the statutory language at issue, a majority of federal courts of appeals have explained that, if the underlying criminal statute contemplates criminalizing a continuing course of conduct and the defendant has been charged with violating the statute by a continuing course of conduct, a single count premised on multiple, separate instances of conduct is not duplicitous when the multiple instances of conduct constitute "a continuing course of conduct, during a discrete period of time . . . ." (Internal quotation marks omitted.) *United States* v. *Davis,* 471 F.3d 783, 790 (7th Cir. 2006); see also *United States* v. *O'Brien,* 953 F.3d 449, 455 (7th Cir. 2020), cert. denied,        U.S.      , 141 S. Ct. 1128, 208 L. Ed. 2d 565 (2021); *United States* v. *Prieto,* 812 F.3d 6, 12 (1st Cir.), cert. denied,        U.S.       , 137 S. Ct. 127, 196 L. Ed. 2d 100 (2016); *United States* v. *Mancuso,* 718 F.3d 780, 792 (9th Cir. 2013); *United States* v. *Moyer,* 674 F.3d 192, 205 (3d Cir.), cert. denied, 568 U.S. 846, 133 S. Ct. 165, 184 L. Ed. 2d 82 (2012), and cert. denied sub nom. *Nestor* v. *United States,* 568 U.S. 1143, 133 S. Ct. 979, 184 L. Ed. 2d 760 (2013); *United States* v. *Kamalu,* 298 Fed. Appx. 251, 254 (4th Cir. 2008); *United States* v. *Wiles,* 102 F.3d 1043, 1062 (10th Cir. 1996), cert. denied, 522 U.S. 947, 118 S. Ct. 363, 139 L. Ed. 2d 283 (1997), and vacated sub nom. *United States* v. *Schleibaum,* 522 U.S. 945, 118 S. Ct. 361, 139 L. Ed. 2d 282 (1997); *United States* v. *Berardi,* 675 F.2d 894, 898 (7th Cir. 1982); *United States* v. *Alsobrook,* 620 F.2d 139, 142–43 (6th Cir.), cert. denied, 449 U.S. 843, 101 S. Ct. 124, 66 L. Ed. 2d 51 (1980).[11] To determine if a statute criminalizes only a single act, a continuous course of conduct, or both, courts must interpret the statute's language in the manner directed by General Statutes § 1-2z.[12] See, e.g., *State*

v. *Cody M.*, 337 Conn. 92, 102–103, 259 A.3d 576 (2020); id., 106 (holding, based on interpretation of language of General Statutes § 53a-223a as required by § 1-2z, that legislature intended to criminalize each separate offense under § 53a-223a, not continuous course of conduct).[13] If a statute does criminalize a continuing course of conduct, then the court must determine whether the multiple instances of conduct alleged in fact constitute a continuous course of conduct by examining, among other things, whether the acts occurred within a relatively short period of time, were committed by one defendant, involved a single victim, and furthered a single, continuing objective. See, e.g., *United States* v. *O'Brien*, supra, 455; *United States* v. *Davis*, supra, 790–91; *United States* v. *Berardi*, supra, 898.

When a single count does charge the defendant with having violated a single statute in multiple, separate instances, each of which could establish a separate violation of the statute, federal courts agree that such a count is duplicitous. See, e.g., *United States* v. *Mancuso*, supra, 718 F.3d 792; *United States* v. *Moyer*, supra, 674 F.3d 204–205; *United States* v. *Kamalu*, supra, 298 Fed. Appx. 254–55; *United States* v. *Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001); *United States* v. *Schlei*, 122 F.3d 944, 979 (11th Cir. 1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998); *United States* v. *Correa-Ventura*, supra, 6 F.3d 1081–82; *United States* v. *Holley*, supra, 942 F.2d 927–29; *United States* v. *Tanner*, 471 F.2d 128, 138–39 (7th Cir.), cert. denied, 409 U.S. 949, 93 S. Ct. 269, 34 L. Ed. 2d 220 (1972).

A determination of duplicity does not end the analysis, however. Contrary to the concurrence's dire warning that we are stripping prosecutors of their "traditional authority" and placing "an unwarranted burden on young victims," a duplicitous count does not necessarily violate a defendant's right to jury unanimity. As explained, a duplicitous count may be cured by a bill of particulars or a specific unanimity instruction.[14] Thus, as long as one of these remedies is given, the state may continue to charge a defendant with a single count premised on multiple, separate incidents of conduct without violating his right to jury unanimity. In the absence of one of those remedies, however, a majority of federal courts of appeals have held that a duplicitous count violates a defendant's right to jury unanimity.[15] See, e.g., *United States* v. *Newell*, supra, 658 F.3d 28 (single count premised on multiple acts was duplicitous, and thus trial court's failure to give unanimity instruction violated defendant's right to jury unanimity); *United States* v. *Fawley*, 137 F.3d 458, 471 (7th Cir. 1998) (trial court's failure to give specific unanimity instruction violated defendant's right to jury unanimity when single count was premised on multiple, separate acts); *United States* v. *Schlei*, supra, 122 F.3d 979–80 (single count was duplicitous, and thus trial court's failure to cure with specific unanimity instruction violated defendant's right

to jury unanimity); *United States* v. *Holley*, supra, 942 F.2d 928–29 (single count based on multiple, separate acts was duplicitous, and thus trial court's failure to give specific unanimity instruction violated defendant's right to jury unanimity); *United States* v. *Beros*, supra, 833 F.2d 460–63 (single count based on multiple, separate acts was duplicitous and implicated defendant's right to jury unanimity, and thus trial court's failure to give specific unanimity instruction was error and not harmless). But cf. *United States* v. *Sarihifard*, 155 F.3d 301, 310 (4th Cir. 1998) (although defendant was charged with single count of perjury premised on multiple, separate instances of conduct, right to jury unanimity was not violated because trial court gave specific unanimity instruction); *United States* v. *Alsobrook*, supra, 620 F.2d 142–43 (same).

But even then, reversal of the defendant's conviction is required only if the defendant establishes prejudice, namely, that the duplicity created the genuine possibility that the conviction resulted from different jurors concluding that the defendant committed different acts.[16] See *United States* v. *Sarihifard*, supra, 155 F.3d 310; *United States* v. *Correa-Ventura*, supra, 6 F.3d 1082; *United States* v. *Holley*, supra, 942 F.2d 926; *United States* v. *Beros*, supra, 833 F.2d 460–63. But see *United States* v. *Sturdivant*, supra, 244 F.3d 75; *United States* v. *Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). In such cases, courts have invoked principles of fairness in requiring a specific unanimity instruction to avoid any potential for juror confusion.[17]

In sum, to determine if a defendant was entitled to a specific unanimity charge, we apply the following three-pronged test: (1) Considering the allegations in the information and the evidence admitted at trial, does a single count charge the defendant with violating a single statute in multiple, separate instances? (2) If so, then does each instance of conduct establish a separate violation of the statute? If the statute contemplates criminalizing a continuing course of conduct, then each instance of conduct is not a separate violation of the statute but a single, continuing violation. To determine whether the statute contemplates criminalizing a continuing course of conduct, we employ our well established principles of statutory interpretation. Only if each instance of conduct constitutes a separate violation of the statute is a count duplicitous. And (3) if duplicitous, was the duplicity cured by a bill of particulars or a specific unanimity instruction? If yes, then there is no unanimity issue. If not, then a duplicitous count violates a defendant's right to jury unanimity but reversal of the defendant's conviction is required only if the defendant establishes prejudice.

C

The concurrence disagrees with the test we adopt, despite the fact that it is followed by a majority of

federal courts of appeals, and would instead adopt the test applied by the United States Court of Appeals for the Second Circuit. See footnotes 12 and 15 of this opinion. Specifically, the concurrence contends that the test that court applies regarding unanimity as to instances of conduct differs from, and is superior to, the test the majority of federal courts of appeals apply because, in determining whether a statute contemplates criminalizing a continuing course of conduct under the second prong of the test the majority of federal courts apply, the Second Circuit relies on a presumption in favor of prosecutorial discretion when the statute at issue is silent—meaning that, when the legislature's intent regarding whether a statute criminalizes a single act, a continuous course of conduct, or both remains ambiguous after a full analysis pursuant to § 1-2z, including an examination of the relevant legislative history, we should apply a presumption in favor of the prosecutor's having discretion to charge a defendant with a single count of the crime at issue based on either a single act or a continuous course of conduct. The concurrence argues that adopting this presumption is the better approach because of its utility in sexual assault cases.

At the outset, we must immediately correct the concurrence's erroneous suggestion that we have adopted our own presumption that silence on this issue means that a prosecutor may charge the crime only as a single act and not as a continuing course of conduct. That is not it at all. Rather, our holding in the present case that the defendant properly could be charged with having engaged in a continuous course of conduct under § 53-21 (a) (2) is not based on any presumption but, rather, on our interpretation of the statute under § 1-2z, including our review of the statute's legislative history. See part II of this opinion. Use of a presumption is neither necessary nor warranted in the present context.

At any rate, we decline to apply the concurrence's presumption for four reasons.[18] First, as we will explain in part II of this opinion, based on the language of § 53-21 (a) (2), case law interpreting this statute, and relevant legislative history, it is clear that our legislature specifically intended to criminalize both single acts and a continuous course of conduct under subsection (a) (2) of our risk of injury statute. Contrary to the concurrence's assertion, a full and complete analysis pursuant to § 1-2z does not end in silence on this issue, thereby requiring this court to resort to any kind of presumption. What the concurrence calls silence is not silence but the absence of explicit language specifically stating that the statute criminalizes only a continuous course of conduct or only single acts. Rather than conduct a full analysis pursuant to § 1-2z and come to a conclusion about the statute's meaning, as we are obliged to do, the concurrence's rule would hold that, if the statute is "facially silent"—in other words, if explicit language is not used, such as the phrase "course of conduct"—

then a criminal statute is silent regarding whether it criminalizes a single act, a continuous course of conduct, or both, and a prosecutor can choose which charging method to apply. We decline to apply such a rule and instead follow the dictates of § 1-2z. Thus, we need not decide whether a presumption exists and should apply when the legislature is arguably silent as to its intent regarding whether a statute criminalizes a single act, a continuous course of conduct, or both.

Second, although, as the concurrence suggests, this court does at times "[give] decisions of the Second Circuit 'particularly persuasive weight in the resolution of issues of federal law,' " we are hesitant to adopt the case law of the Second Circuit when "the great weight" of federal jurisprudence conflicts with it. *Saunders* v. *Commissioner of Correction*, 343 Conn. 1, 17, 272 A.3d 169 (2022). As discussed previously, the majority of federal courts of appeals apply the test that we adopt today and do not adopt, apply, or even reference any presumption in the event of legislative silence on this issue.[19]

Third, whether to apply a presumption in interpreting a criminal statute to determine if it criminalizes a continuous course of conduct is an issue of *state* law, even though this determination is necessary to the adjudication of the defendant's federal unanimity claim. In other words, under the second prong of the federal test for a unanimity claim regarding instances of conduct, the court must determine if the statute criminalizes a continuous course of conduct. However, whether the statute in fact criminalizes a continuous course of conduct is an issue of state law, as it involves the interpretation of our own statutes. The concurrence contends that there is "an ancient common-law pleading tradition, one that the legislature is well aware of and continues to implicitly approve," pursuant to which prosecutors have discretion to charge a crime based on a single act or a continuous course of conduct when a statute is silent on the issue. Although this "tradition" is not so well established that it is written anywhere, the concurrence derives this "tradition" from the fact that "prosecutors have been charging crimes as continuing offenses since the nineteenth century," and thus our state has a "long history of affording prosecutors broad discretion in the charging of crimes . . . ."

The presumption that the concurrence touts is not one that any of our state decisions supports and certainly not one that we would credit the legislature with being aware of at the time it enacted the statute at issue. Even if the charging practices of prosecutors, or the litigation positions of any parties, were the stuff of legislative acquiescence,[20] any history of the state's routinely charging in this fashion has more obvious explanations than legislative acceptance of an unarticulated presumption of prosecutorial discretion found

nowhere in the decisions of this court, namely, that (1) defendants may not often have challenged this method of charging because, if successful, it would likely result in multiple charges and greater exposure, as the concurrence points out, and (2) only recently, since federal unanimity case law has developed to recognize claims of unanimity as to instances of conduct, has the proper interpretation of the statute had unanimity implications.

Thus, the fact that we have cases that merely state that a prosecutor charged a defendant under a single count based on a continuous course of conduct but the nature of the charging was not challenged on appeal does not support the concurrence's proposed presumption. See, e.g., *State* v. *Vumback*, supra, 263 Conn. 217, 219–20 (although defendant was charged with first and third degree sexual assault of child, as well as risk of injury to child "on divers dates between approximately June, 1990 through July, 1996," and challenged trial court's denial of request for bill of particulars, court did not address whether statutes criminalized continuous course of conduct or whether prosecutor had discretion in this regard (internal quotation marks omitted)); *State* v. *Snook*, 210 Conn. 244, 263, 265–66, 555 A.2d 390 (although state charged defendant with sexual assault in second degree and sexual assault in third degree for engaging in sexual intercourse with victim "on divers days between June, 1979, and January, 1984," defendant raised only double jeopardy claim, which did not require court to decide if statutes criminalized continuous course of conduct (internal quotation marks omitted)), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Silver*, 139 Conn. 234, 247, 93 A.2d 154 (1952) (*O'Sullivan, J.*, concurring) (merely mentioning that state charged that, "at the [c]ity of Hartford on divers dates, the [defendant] did commit an indecent assault upon a minor" but not deciding if this was proper or analyzing statute to determine if it criminalized course of conduct); *State* v. *William B.*, 76 Conn. App. 730, 735, 822 A.2d 265 (although state charged specifically that, "on divers dates between 1990 and 1994, as a continuing course of conduct, the defendant engaged in sexual intercourse with the victim, who was younger than thirteen, in violation of § 53a-70 (a) (2)," defendant did not challenge state's method of charging), cert. denied, 264 Conn. 918, 828 A.2d 618 (2003); *State* v. *Osborn*, 41 Conn. App. 287, 295, 676 A.2d 399 (1996) (although state charged defendant with attempt to commit sexual assault of child "on diverse dates between June 20, 1986, and June 20, 1991," defendant did not challenge state's method of charging); *State* v. *Mancinone*, 15 Conn. App. 251, 256 n.5, 545 A.2d 1131 (although state charged defendant with two counts of sexual assault in second degree by alleging that he engaged in sexual intercourse with minors "on divers dates between August 1983 and November 1984," because defendant was acquitted on those charges,

appeal did not involve challenge to state's method of charging or require court to decide whether statute criminalized continuous course of conduct (internal quotation marks omitted)), cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). That is not the same as this court holding that such an interpretation is proper or that a presumption of prosecutorial discretion exists. Most important, for purposes of determining legislative intent, of course, the past practice of prosecutors is not a relevant factor under § 1-2z in ascertaining whether a statute criminalizes a continuing course of conduct.

Additionally, contrary to the concurrence's contention, there is no case law adopting and applying this presumption. For example, the concurrence cites to a nineteenth century case as proof that this court historically has afforded prosecutors discretion to charge crimes based either on a single act or a continuous course of conduct when a statute is silent in this regard. See *State* v. *Bosworth*, 54 Conn. 1, 2, 4 A. 248 (1886) ("all offenses involving continuous action, and which may be continued from day to day, may be so alleged"). In *Bosworth*, the state charged the defendant with a single count of cruelly overworking animals, one count of neglecting animals, and one count of depriving animals of sustenance, with each count premised on multiple acts of cruelty to animals. Id. The court explained that the crime of cruelty to animals "may consist of overworking, [underfeeding], or depriving of proper protection, or all these elements may combine and constitute the offense." Id. In other words, the court examined the nature of what the statute criminalized and determined that it criminalized both each single act of cruelty, as well as a continuous course of these acts of cruelty. Thus, the offense at issue was one that may involve continuous action. An examination of the decision shows that, when the court stated that "all offenses involving continuous action, and which may be continued from day to day, may be so alleged," it did not mean that any crime involving continuous action may be charged as such but, rather, that any statutory offense that criminalizes continuous action may be charged as such. Id.

Similarly, the concurrence cites to *State* v. *Cook*, 75 Conn. 267, 53 A. 589 (1902), in support of its argument that, for decades, "Connecticut courts [have] recognized that not all crimes are either exclusively individual act or course of conduct crimes. Some crimes that were not inherently continuing offenses could be charged either as individual acts or with a continuando." *Cook*, however, does not support adopting a presumption in favor of prosecutorial discretion when a criminal statute is silent regarding whether it criminalizes each act individually or a continuing course of conduct. Although the precise statute at issue is not cited or quoted in

*Cook*, this court explained in that case that "[t]he statute under which the accused [was] prosecuted enumerates various acts of cruelty to animals for which a punishment is imposed, among which are the depriving [of] an animal of necessary sustenance, and the unnecessary failure, by one having the charge or custody of any animal, to provide it with proper food, drink, or protection from the weather." *State* v. *Cook*, supra, 268. This language is consistent with the language of our animal cruelty statute at that time; see General Statutes (1902 Rev.) § 1331;[21] which obviously could be interpreted as criminalizing both a course of conduct and a single act. Moreover, not only did the court's decision in *Cook* not refer to, adopt, or apply any presumption, it also did not involve a challenge to the state's method of charging or contain any statutory interpretation, which is critical to an analysis of a claim of unanimity as to instances of conduct.

It is true that a handful of Appellate Court cases have held that there is no unanimity violation when a defendant has been charged in a single count with violating the same statute based on multiple acts, especially in the context of ongoing sexual assault of children. See, e.g., *State* v. *Saraceno*, supra, 15 Conn. App. 225–27 and n.1 (decided prior to recognition of claims of unanimity as to instances of conduct, not deciding whether statute criminalized continuing course of conduct, and not applying any presumption in favor of prosecutorial discretion), cert. denied, 209 Conn. 823, 552 A.2d 431 (1988), and cert. denied, 209 Conn. 824, 552 A.2d 432 (1988); see also *State* v. *Romero*, 269 Conn. 481, 504, 849 A.2d 760 (2004) (same); *State* v. *Michael D.*, 153 Conn. App. 296, 322, 101 A.3d 298 (same), cert. denied, 314 Conn. 951, 103 A.3d 978 (2014); *State* v. *Vere C.*, 152 Conn. App. 486, 508–10, 98 A.3d 884 (same), cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014); *State* v. *Jessie L. C.*, 148 Conn. App. 216, 227, 84 A.3d 936 (same), cert. denied, 311 Conn. 937, 88 A.3d 551 (2014). These cases do not support adopting the concurrence's proposed presumption, as they do not apply a presumption. Rather, these cases were decided under the test set forth in *Gipson* and before this court recognized claims of unanimity as to instances of conduct. As we explained, the *Gipson* test did not require that a court analyze whether the statute at issue criminalizes a continuous course of conduct and is not the proper test for determining claims of unanimity regarding instances of conduct.

Moreover, we disagree with the concurrence that its presumption is supported by "the fact that the legislature has, in certain instances, expressly provided either that a particular statute must be charged as a continuing offense; see, e.g., General Statutes § 53a-181d (b) (1) and (2); or that it must not be charged as a continuing offense; see, e.g., General Statutes § 15-173"; because this shows that, "when the legislature wishes to speak

on the issue, one way or the other, it knows how to do so." These statutes do show that, when the legislature explicitly intends to allow a charge to be based only on a continuous course of conduct or a single act, it knows how to do so. This does not prove, however, that the legislature intended that other statutes would provide prosecutors with discretion. For example, under our second degree stalking statute, § 53a-181d, the legislature specifically proscribed certain continuous courses of conduct; see General Statutes § 53a-181d (b) (1), as amended by Public Acts 2021, No. 21-56, § 2 ("knowingly engages in a *course of conduct* directed at or concerning a specific person that would cause a reasonable person to (A) fear for such specific person's physical safety or the physical safety of a third person; (B) suffer emotional distress; or (C) fear injury to or the death of an animal owned by or in possession and control of such specific person" (emphasis added)); as well as certain kinds of single acts. See General Statutes § 53a-181d (b) (3) ("[s]uch person, for no legitimate purpose and with intent to harass, terrorize or alarm, by means of electronic communication, including, but not limited to, electronic or social media, discloses a specific person's personally identifiable information without consent of the person"). Similarly, under subsection (a) (1) of our risk of injury statute, the legislature specifically criminalized both a single act and a continuous course of conduct through the use of the terms "act" and "situation," respectively. See General Statutes § 53-21 (a) (1) ("wilfully or unlawfully causes or permits any child under the age of sixteen years to be *placed in such a situation* that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or *does any act* likely to impair the health or morals of any such child" (emphasis added)). Thus, by the concurrence's own logic, these statutes show that, when the legislature intends to explicitly criminalize both an act and a continuous course of conduct, it knows how to do so. That does not mean that such explicit statutory language is required to interpret a statute as criminalizing both an act and a continuous course of conduct. As previously discussed, we by no means are adopting a presumption against such charging when the plain language of a statute is not explicit in this regard. Rather, courts must closely analyze the language of the statute, case law interpreting the statute, the statutory scheme and, if needed, the legislative history to determine if a statute criminalizes both an act and a continuous course of conduct.

Finally, the concurrence asserts that adopting this presumption is the superior approach based largely on how it believes the majority test will apply to sexual assault cases involving children. There are indeed unique challenges to proving charges involving child victims of sexual assault. Legislatures and courts can,

should, and often have responded appropriately, including by extending statutes of limitations, or by modifying rules of evidence.[22] See General Statutes § 54-193; see also Conn. Code Evid. § 4-5 (b). However, the concurrence's proposed presumption would not apply only in child sexual abuse cases. For this reason alone, it is more prudent for us to defer to the legislature to address this specific issue than to adopt a general presumption that would apply to all criminal statutes.

As we discuss in the companion case we also decide today, *State* v. *Joseph V.*, 345 Conn. 516,      A.3d (2022), the test we adopt today does not necessarily lead to the hypothetical parade of horribles the concurrence portends. In particular, the test we apply does not result in a prohibition on the state's charging a defendant with a single count of sexual assault premised on a continuous course of contact, as long as there is either a specific unanimity instruction or an instruction that the jury must be unanimous that all alleged acts occurred. Moreover, in *Joseph V.*, we leave open the possibility that "there [may exist] a common-law exception to the right to jury unanimity for a continuing course of conduct of sexual assault of children when there is only general testimony." Id., 555 n.20. We note that, in sexual assault cases involving only general testimony, a duplicitous count that is not cured by a specific unanimity instruction likely will not be harmful.

### D

Before applying the foregoing federal law to the defendant's specific claims, we note that appellate courts in this state have not recognized or applied this case law to claims of unanimity as to instances of conduct. In particular, this court has not distinguished between unanimity of elements and unanimity of instances of conduct but, rather, has treated them similarly. Compare *State* v. *Niemeyer*, 258 Conn. 510, 525, 782 A.2d 658 (2001) (unanimity of elements case), *State* v. *Dyson*, 238 Conn. 784, 793, 680 A.2d 1306 (1996) (same), *State* v. *Tucker*, 226 Conn. 618, 646, 629 A.2d 1067 (1993) (same), *State* v. *Reddick*, 224 Conn. 445, 452–53, 619 A.2d 453 (1993) (same), *State* v. *Famiglietti*, supra, 219 Conn. 618 (same), *State* v. *Smith*, 212 Conn. 593, 606, 563 A.2d 671 (1989) (same), *State* v. *James*, 211 Conn. 555, 584–85, 560 A.2d 426 (1989) (same), and *State* v. *Suggs*, 209 Conn. 733, 760–61, 553 A.2d 1110 (1989) (same), with *State* v. *Sorabella*, 277 Conn. 155, 206–207, 891 A.2d 897 (multiple acts case), cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006), *State* v. *Ceballos*, 266 Conn. 364, 368–69, 417–20 and n.55, 832 A.2d 14 (2003) (same),[23] *State* v. *Jennings*, 216 Conn. 647, 661–64, 583 A.2d 915 (1990) (same), and *State* v. *Spigarolo*, 210 Conn. 359, 388–92, 556 A.2d 112 (same), cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).[24]

These cases have failed to heed the relevant federal

precedent discussed in part I B of this opinion, which clearly distinguishes between unanimity claims involving a single count premised on multiple, separate instances of conduct, and unanimity claims involving a single count premised on the violation of multiple statutes, statutory subsections, or statutory clauses. See *United States* v. *Correa-Ventura*, supra, 6 F.3d 1080 (noting that *Schad* test applies to cases involving single count premised on violation of multiple statutes, statutory subsections, or statutory clauses but that different test applies in cases involving single count premised on multiple, separate instances of conduct). In light of the unique nature of these two different unanimity issues, we are persuaded by and agree with the distinction federal courts have drawn between claims of unanimity as to elements and claims of unanimity as to instances, with separate tests applying to each type of claim. As a result, we adopt the foregoing federal test for claims of unanimity as to instances of conduct. To the extent that our prior case law or that of the Appellate Court has ignored this distinction, we overrule those cases.

## II

Applying the federal test articulated in part I B of this opinion to each count at issue in the present case, in turn, we disagree with the defendant that counts one, five, and six, which each alleged risk of injury to a child, were duplicitous. Because both counts one and six were premised on similar testimony about the frequent touching of N's and T's breasts in a sexual and indecent manner, we first analyze these two counts together. Under the first prong of the test, we determine that both of these counts were premised on multiple, separate incidents of conduct. As to count one, there was testimony that the defendant touched N's breasts in a sexual and indecent manner frequently during weekly visits to his residence, with this inappropriate touching ultimately escalating to oral sex. Therefore, clearly as to count one, evidence was presented to the jury of multiple, separate incidents of conduct, not a single incident. The same is true of count six, in support of which there was testimony that the defendant touched T's breasts in a sexual and indecent manner frequently whenever she was at his residence where she regularly attended gatherings and parties, and babysat. This evidence shows that, as the case was presented to the jury, each count was premised on evidence of multiple, separate incidents of conduct, not a single incident.

Because counts one and six were premised on multiple, separate incidents of conduct, we must proceed to the second prong of the test and determine whether each incident could establish an independent violation of § 53-21 (a) (2). We hold that, although the state has discretion to charge the defendant with violating § 53-21 (a) (2) as to each incident of conduct that occurred,

that statute also permits the state to properly charge and present to the jury these incidents as a continuing course of conduct.

Section 53-21 (a) prohibits "[a]ny person . . . (2) [from having] contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subject[ing] a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ." General Statutes § 53a-65 (8) defines "intimate parts" as "the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts."[25]

It is not clear from the plain language of § 53-21 (a) (2) that the multiple, separate instances of conduct at issue in the present case were separate and distinct violations of that statute. At first blush, the phrase "contact with the intimate parts" in the risk of injury statute does not appear to clarify whether the statute criminalizes a continuing course of conduct or limits its scope to a single occurrence. Because of this, the concurrence concludes that the statute is ambiguous or silent on this issue. The problem is that the statute is not silent. The fact that the legislature did not explicitly use the phrase "continuous course of conduct" or "each single act" does not end our analysis. Such talismanic phrases are not required. Rather, we must look to the definitions of the terms used. Although "contact" is not defined by the statute, the plain meaning of this term, as defined by a dictionary, includes a "union or junction of body surfaces . . . a touching or meeting . . . ." Webster's Third New International Dictionary (2002) p. 490. This definition suggests that the act of having "contact" is a singular incident—a single touching or meeting of body parts. This definition of "contact" as referring to each singular incident is consistent with this court's prior case law interpreting § 53-21, which this court must consider in determining under § 1-2z whether the statute is plain and unambiguous. See, e.g., *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299, 118 A.3d 26 (2015) ("[i]n interpreting the [statutory] language . . . we do not write on a clean slate, but are bound by our previous judicial interpretations of the language and the purpose of the statute" (internal quotation marks omitted)). In case law prior to the 1995 amendment of § 53-21; see Public Acts 1995, No. 95-142, § 1 (P.A. 95-142); this court held that risk of injury to a child may be charged under a continuing course of conduct theory. See *State* v. *Spigarolo*, supra, 210 Conn. 390–92 (noting that state charged risk of injury count under "situation" prong of § 53-21 premised on multiple acts of sexual contact and presented it to jury as continuing course of conduct crime, and court cited to *State* v. *Hauck*, 172 Conn. 140, 150, 374 A.2d 150 (1976), which held that violation of situation prong of § 53-21 may be

premised on continuing course of conduct).[26] Since the enactment of P.A. 95-142, § 1, we never have held that the legislature no longer intended that risk of injury to a child would be a continuing course of conduct crime. Thus, the plain language of the statute is ambiguous.

The legislative history demonstrates that, when what is now subsection (a) (2) was established in 1995 by P.A. 95-142, § 1, the purpose of the amendment was to "[divide] the risk of injury . . . [statute] into two parts . . . ." 38 H.R. Proc., Pt. 7, 1995 Sess., p. 2590, remarks of Representative James A. Amann. The purpose of the statute was manifestly *not* to alter the state's ability to charge risk of injury as a continuing course of conduct crime when the facts involved sexual contact. Specifically, prior to the amendment, the statute had been used to charge both sexual and nonsexual offenses. The statute generally criminalized conduct by one who wilfully or unlawfully placed a child "in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child . . . ." General Statutes (Rev. to 1993) § 53-21. Prior to the enactment of P.A. 95-142, § 1, this court had interpreted § 53-21 as criminalizing a continuing course of sexual contact in which a child was placed in a situation that was likely to be harmful to the child's health and morals. See *State* v. *Payne*, 240 Conn. 766, 774–75, 695 A.2d 525 (1997) (citing *State* v. *Velez*, 17 Conn. App. 186, 199, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989), which stated that sexual activity with children, prior to enactment of P.A. 95-142, § 1, created situation likely to be harmful to their physical, moral, and emotional well-being), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 849 A.2d 760 (2004).

Prior to 1995, § 53-21 criminalized both sexual contact and nonsexual contact without distinction, and thus it was not clear from the conviction itself whether the defendant had been convicted of a crime that was sexual in nature. This made it difficult to place defendants, who were convicted of risk of injury to a child because of sexual contact, on the sex offender registry. For ease of identifying sex offenders, P.A. 95-142, § 1, divided the statute into sexual contact offenses under what is now subsection (a) (2) and nonsexual contact offenses under what is now subsection (a) (1), allowing for the classification of sex offenders. See 38 S. Proc., Pt. 5, 1995 Sess., pp. 1769–70, remarks of Senator Martin M. Looney ("what the first part of the bill deals with [is] the change in the definition of risk of injury to a minor, and we have a, separating into sections that deal with a, a sexual component, and a [nonsexual] component, so that the offense can be more carefully delineated"); 38 H.R. Proc., Pt. 7, 1995 Sess., p. 2590, remarks of Representative Amann ("Section one divides

the risk of injury to a minor into two parts, which by the way, is not on the list of current sex offender crimes. One [risk of injury] crime is going to be classified as a sex offender crime and one is not.").[27]

By dividing sexual and nonsexual contact offenses with the enactment of P.A. 95-142, § 1, the legislature maintained in subsection (a) (1), for nonsexual contact, the distinction between the creation of a "situation" and the commission of an act. See General Statutes § 53-21 (a) (1) ("wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child"); see also *State* v. *Payne*, supra, 240 Conn. 774 ("[a]lthough both parts of the statute are intended to protect children from predatory and potentially harmful conduct of adults, the two parts nonetheless are directed at different kinds of harm to children"). The legislature did not draw this distinction in criminalizing sexual contact under subsection (a) (2). Nothing in this legislative history suggests that the legislature intended to distinguish between the creation of a situation and the performance of a single act under subsection (a) (2) or that the legislature intended to no longer criminalize a continuing course of conduct of sexual and indecent touching of intimate parts. There is no indication that the legislature sought to alter the substance of the crime. Rather, the legislative history shows that the legislature intended only to separate sexual and nonsexual contact. By not explicitly making the distinction between an act and a situation, and in the absence of any evidence that the legislature intended to alter the scope of the crime of risk of injury to a child in sexual contact cases to only acts and not situations, it is clear that the legislature, in P.A. 95-142, § 1, intended to criminalize both situations and acts without treating them as separate elements. Thus, this legislative history shows that, in enacting § 53-21 (a) (2), the legislature intended to continue to criminalize both a single instance of contact as well as an ongoing course of conduct.

Not only does § 53-21 (a) (2) contemplate criminalizing a continuing course of conduct, but, in the present case, the state charged the defendant under such a theory in counts one, five, and six. Specifically, in count one, the state charged the defendant with committing risk of injury to a child by having "contact with the intimate parts" of N "in or about 2005 through January 8, 2007," and, in count six, the state charged the defendant with committing risk of injury to a child "in or about 2005 through October 23, 2007," by having "contact with the intimate parts" of T. This language put the defendant on notice that he was charged with touching the intimate parts of N and T in a sexual and indecent

manner over a period of time, rather than being charged with a single instance of contact as to each child on a single date. This is consistent with how the prosecutor presented and argued these counts to the jury. The prosecutor argued that, although the jury needed to find that only a single incident of sexual contact occurred to find the defendant guilty under each count, the state's theory was that the defendant continuously engaged in this inappropriate touching during the alleged time period.

Moreover, based on the evidence admitted at trial, as to counts one and six, the jury reasonably could have found that the multiple, separate incidents of conduct did indeed constitute a continuing course of conduct. As to count one, the testimony of N and other victims showed that, although the multiple incidents of sexual and indecent touching of N's intimate parts occurred for a prolonged period of time—approximately two years— there was only a relatively short period of time between the occurrence of each incident, as this conduct happened on a weekly basis. See *United States* v. *Berardi*, supra, 675 F.2d 898 (concluding that "three alleged acts of obstruction occurred within a relatively short period of time" despite each act having occurred months apart); see also *United States* v. *Root*, 585 F.3d 145, 155 (3d Cir. 2009) (multiple acts may be considered part of continuous course of conduct even if conduct spanned years). Additionally, these incidents were committed by a single defendant, involved a single victim (N), and furthered a single, continuing objective to touch N in a sexual and indecent manner.

Similarly, as to count six, the testimony of T and other victims showed that the multiple incidents of sexual and indecent touching of T's intimate parts occurred frequently during a relatively short period of time (on a regular basis when T was at the defendant's residence during the span of two years), were committed by a single defendant, involved a single victim (T), and furthered a single, continuing objective to touch T in a sexual and indecent manner whenever other adults were unaware. Accordingly, counts one and six were premised on a continuing course of conduct. As a result, these counts were not duplicitous, and thus the trial court's failure to grant the defendant's requests for a bill of particulars or a specific unanimity instruction did not violate his right to jury unanimity.

Count five, however, differs from counts one and six in that it is premised on multiple acts of sexual and indecent contact with S's vagina and breasts during a single evening. As noted previously in this opinion, at times, "it may be difficult to determine whether a single count is premised on multiple acts, each of which is committed in the course of a single criminal episode of relatively brief, temporal duration, and thus constitutes alternative means of committing the elements at issue,

or whether it is premised on multiple, separate and distinct acts, each of which could constitute a separate statutory violation." Part I B of this opinion; see *United States* v. *Newell*, supra, 658 F.3d 23–24. In the present case, the jury reasonably could have interpreted the evidence admitted in only one of two ways. Although the length of time is unclear, the testimony of S shows that this touching occurred during the course of a single evening. From this evidence, the jury reasonably could have found that these acts constituted a single criminal episode of relatively brief, temporal duration and thus did not constitute multiple, separate incidents of conduct under the first prong of the applicable test. Alternatively, from this evidence, even if the jury found under prong one of the applicable test that there was enough time between each act for the acts to constitute multiple, separate incidents of conduct, the jury reasonably could have found under prong two of the applicable test that these acts constituted a continuing course of conduct, not separate violations of § 53-21 (a) (2), because this touching occurred during a relatively short period of time (multiple times during a single evening), was committed by a single defendant, involved a single victim (S), and furthered a single, continuing objective to touch S in a sexual and indecent manner. Additionally, as it did with counts one and six, the state charged and argued count five under a continuing course of conduct theory. As a result, count five was not duplicitous and thus did not violate the defendant's right to jury unanimity.

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and McDONALD and ECKER, Js., concurred.

\* In accordance with our policy of protecting the privacy interests of victims of the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

\*\* December 13, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We note that the word "duplicitous" has a unique legal definition that differs from its common dictionary definition. Compare Black's Law Dictionary (11th Ed. 2019) p. 635 ("alleging two or more matters in one plea"; and "characterized by double pleading"), with Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 387 (defining "duplicitous" as "marked by duplicity" and "deceptive in words or action").

[2] Although § 53-21 has been amended numerous times since the defendant's commission of the crimes that formed the basis of his conviction; see, e.g., Public Acts 2015, No. 15-205, § 11; Public Acts 2013, No. 13-297, § 1; and Public Acts 2007, No. 07-143, § 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53-21.

[3] The defendant was charged with five counts of risk of injury to a child, with each count pertaining to each different child. Specifically, count one charged the defendant with violating § 53-21 (a) (2) as to N. Count three charged the defendant with violating § 53-21 (a) (2) as to C. Count four

charged the defendant with violating § 53-21 (a) (2) as to O. Count five charged the defendant with violating § 53-21 (a) (2) as to S. Count six charged the defendant with violating § 53-21 (a) (2) as to T.

Counts one, five, and six charged the defendant with having violated a single statutory subdivision: subdivision (2) of subsection (a) of § 53-21. Specifically, as to count one, the information charged that, at the defendant's residence in Lisbon, "in or about 2005 through January 8, 2007, the said [defendant] did commit the crime of injury or risk of injury to or impairing the morals of a child in that he had contact with the intimate parts of a child under the age of sixteen years, the minor female [N], in a sexual and indecent manner likely to impair the health and morals of said child, in violation of § 53-21 (a) (2) of the . . . General Statutes."

Similarly, as to count five, the information charged that, at the defendant's residence in Lisbon, "in or about 2005 through September 15, 2008, the said [defendant] did commit the crime of injury or risk of injury to or impairing the morals of a child in that he had contact with the intimate parts of a child under the age of sixteen years, the minor female [S], in a sexual and indecent manner likely to impair the health and morals of said child, in violation of § 53-21 (a) (2) of the . . . General Statutes."

As to count six, the information charged that, at the defendant's residence in Lisbon, "in or about 2005 through October 23, 2007, the said [defendant] did commit the crime of injury or risk of injury to or impairing the morals of a child in that he had contact with the intimate parts of a child under the age of sixteen years, the minor female [T], in a sexual and indecent manner likely to impair the morals of said child, in violation of § 53-21 (a) (2) of the . . . General Statutes."

On appeal, the defendant challenges the judgment of conviction only as to counts one, five, and six. He concedes that, because his request for a specific unanimity instruction as to count four was granted, he has no claim as to that count. Additionally, in his reply brief, he concedes that he has no claim as to count three.

[4] The trial court instructed the jury: "As to each count, if you unanimously find that the state has proved beyond a reasonable doubt each of the elements of the crime of risk of injury to a minor, then you shall find the defendant guilty. On the other hand, if you unanimously find that the state has failed to prove beyond a reasonable doubt any of the elements, you shall then find the defendant not guilty. . . . When you reach a verdict, it must be unanimous."

[5] The defendant also stated in his brief to the Appellate Court that his right to a unanimous jury verdict was protected under article first, § 8, of the Connecticut constitution, but he failed to analyze this claim separately under the state constitution, and thus the Appellate Court did not address the state constitutional claim. On appeal to this court, the defendant has not raised a separate state constitutional claim.

[6] We have described the *Gipson* test as follows: "We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Internal quotation marks omitted.) *State* v. *Reddick*, 224 Conn. 445, 453, 619 A.2d 453 (1993).

[7] The concurrence is correct that the issues of duplicity and unanimity are "different—albeit related—matters. The cure for a violation of the rules against duplicitous pleading is, typically, reformulation of the indictment, a bill of particulars, and/or appropriate jury instructions, not reversal of the conviction." (Footnote omitted.) In the present case, the issue of duplicity was raised and evaluated at the pretrial phase of the criminal proceedings. The trial court, however, declined to cure any alleged duplicity. This court must now determine whether the counts were duplicitous and thus violated the defendant's right to jury unanimity, posttrial, based on all the evidence admitted at trial. See *United States* v. *Correa-Ventura*, 6 F.3d 1070, 1086–87 (5th Cir. 1993).

[8] "The requirement of juror unanimity emerged in [fourteenth] century England and was soon accepted as a vital right protected by the common law. . . . This [c]ourt has, repeatedly and over many years, recognized that the [s]ixth [a]mendment requires unanimity. As early as 1898, the [c]ourt said that a defendant enjoys a 'constitutional right to demand that his liberty

should not be taken from him except by the joint action of the court and the unanimous verdict of a jury of twelve persons.' A few decades later, the [c]ourt elaborated that the [s]ixth [a]mendment affords a right to 'a trial by jury as understood and applied at common law . . . includ[ing] all the essential elements as they were recognized in this country and England when the [c]onstitution was adopted.' And, the [c]ourt observed, this includes a requirement 'that the verdict should be unanimous.' " (Footnotes omitted.) *Ramos* v. *Louisiana*, supra, 140 S. Ct. 1395–97.

[9] In *Apodaca* v. *Oregon*, 406 U.S. 404, 411, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972), however, the court upheld criminal convictions under Oregon law that required the agreement of only ten members of a twelve person jury in certain noncapital cases. The court explicitly had acknowledged in *Ramos* that its decision in *Apodaca* was mistaken. See *Ramos* v. *Louisiana*, supra, 140 S. Ct. 1405; see also id., 1410 (Sotomayor, J., concurring as to all but part IV A); id., 1416 (Kavanaugh, J., concurring in part).

[10] We note that, although the United States Supreme Court has classified the right to unanimity as a sixth amendment right, there has been some confusion regarding whether the right to jury consensus as to a defendant's course of action is protected under the sixth amendment or under the due process clauses of the fifth and fourteenth amendments. See *Schad* v. *Arizona*, 501 U.S. 624, 634 n.5, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (opinion announcing judgment). Prior to *Ramos*, the defendant in *Schad* claimed that Arizona's first degree murder statute violated his sixth amendment right to jury unanimity because it did not require the jurors to be unanimous as to one of the alternative theories of premeditated and felony murder. Id., 630 (opinion announcing judgment). The court in *Schad*, however, reframed the defendant's claim as a due process challenge, explaining: "Even assuming a requirement of jury unanimity arguendo, that assumption would fail to address the issue of what the jury must be unanimous about. [The] jury was unanimous in deciding that the [s]tate had proved what, under state law, it had to prove: that [the defendant] murdered either with premeditation or in the course of committing a robbery. The question still remains whether it was constitutionally acceptable to permit the jurors to reach one verdict based on any combination of the alternative findings. . . . In other words, [the defendant's] real challenge is to Arizona's characterization of [first degree] murder as a single crime as to which a verdict need not be limited to any one statutory alternative, as against which he argues that premeditated murder and felony murder are separate crimes as to which the jury must return separate verdicts." Id., 630–31 (opinion announcing judgment). The court noted, however, that characterizing the right at issue as a sixth amendment right or as a due process right was "immaterial to the problem of how to go about deciding what level of verdict specificity is constitutionally necessary." Id., 634 n.5 (opinion announcing judgment).

The United States Court of Appeals for the Third Circuit, however, has reconciled the confusion in the case law in a way we find persuasive: "[R]ead as a whole, we think that [*Schad*'s] emphasis on the [d]ue [p]rocess [c]lause does not mean that the [s]ixth [a]mendment is irrelevant here. Rather, we conclude that the [s]ixth [a]mendment does require unanimity, in federal [and state] criminal trials, on all elements of the offense. However, because what constitutes an 'element' is purely a matter of legislative intent, the [s]ixth [a]mendment places no limit on the legislature's power to make alternative facts 'means' not subject to a unanimity requirement. The limit on the legislature's definitional power, then, comes from the [d]ue [p]rocess [c]lause. . . . As [*Schad*] pointed out, 'this difference in characterization . . . is immaterial to the problem of how to go about deciding what level of verdict specificity is constitutionally necessary.' " *United States* v. *Edmonds*, 80 F.3d 810, 823 n.17 (3d Cir.), cert. denied, 519 U.S. 927, 117 S. Ct. 295, 136 L. Ed. 2d 214 (1996).

[11] Additionally, some federal courts have noted that some state courts have relied on their own common law to hold that a statute encompasses a continuing course of conduct. See *Dyer* v. *Farris*, 787 Fed. Appx. 485, 495 (10th Cir. 2019) (Under Oklahoma law, "the general rule requiring the [s]tate to elect which offense it will prosecute is not in force when separate acts are treated as one transaction. . . . [W]hen a child of tender years is under the exclusive domination of one parent for a definite and certain period of time and submits to sexual acts at that parent's demand, the separate acts of abuse become one transaction within the meaning of this rule." (Citation omitted; internal quotation marks omitted.)), cert. denied, U.S. , 140 S. Ct. 1157, 206 L. Ed. 2d 207 (2020); id. (citing *Gilson* v. *State*, 8 P.3d 883, 899 (Okla. Crim. App. 2000), cert. denied, 532 U.S. 962,

121 S. Ct. 1496, 149 L. Ed. 2d 381 (2001), which stated that, generally, under Oklahoma law, rape was not considered continuing offense, but that, under Oklahoma's common law, court had recognized exception for ongoing sexual abuse of minors under certain circumstances). Because neither party argues that any common-law exception applies, we need not decide today whether creating or applying common-law exceptions in interpreting statutes is proper.

[12] Both the majority and the concurrence agree that, whether a statute criminalizes a single act, a continuous course of conduct, or both is a matter of legislative intent and that this court's first task is to interpret the statute at issue, as directed by § 1-2z. If the statute's clear language, its relationship to other statutes, its legislative history or other extrinsic sources make the legislature's intent clear, then that controls, and the prosecutor's discretion in charging is limited, as made clear by the statute. The concurrence, however, citing to case law from the United States Court of Appeals for the Second Circuit, argues that, in the event that the legislature is silent with respect to its intent, we should adopt and apply a presumption in favor of granting prosecutors discretion to charge crimes based on either a single act or a continuous course of conduct.

We have discovered no support for such a presumption in our case law or in the case law of a majority of the federal courts of appeals. We will discuss this in greater detail in part I C of this opinion. Nevertheless, we need not decide the issue of whether any presumption should apply in the event the legislature is silent with respect to its intent regarding whether a statute criminalizes a single act, a continuous course of conduct, or both because we hold that the legislature's intent under subsection (a) (2) of our risk of injury statute is clear based on the statutory language, case law defining that statute, and relevant legislative history. See part II of this opinion.

[13] In *State* v. *Cody M.*, supra, 337 Conn. 92, the defendant argued that his two convictions under § 53a-223a for violating a standing criminal protective order twice in one transaction violated the constitutional prohibition against double jeopardy because, in his view, violating a protective order is a continuing offense, and the two statements that formed the basis of his convictions— one in which he simply contacted the victim, and the other in which he threatened her—were part of a single conversation that should be viewed as a single violation. Id., 98, 101. In deciding that claim, this court analyzed the language of § 53a-223a pursuant to § 1-2z and determined that the legislature intended to criminalize each separate offense, not a continuous course of conduct. Id., 102–103, 106. We did not apply any presumption or determine that the state had discretion in deciding whether to charge the defendant with multiple single counts or a single count premised on a continuous course of conduct. Thus, we have treated the question of whether a single count may be premised on a continuous course of conduct as a matter of statutory interpretation, requiring us "in the first instance" to follow the admonition of § 1-2z. Id., 104.

[14] For claims of unanimity as to instances of conduct, even if the precise, specific unanimity instruction the defendant requested was not given, no prejudice exists if the jury is instructed that it must be unanimous either as to which instance of conduct occurred or that all of the alleged instances of conduct occurred. See, e.g., *United States* v. *Sarihifard*, 155 F.3d 301, 310 (4th Cir. 1998).

[15] The United States Court of Appeals for the Second Circuit, along with a minority of other federal courts of appeals, has held that, although a single count premised on multiple, separate acts, each of which could constitute a violation of the same statute, statutory subsection, or statutory clause is duplicitous, the defendant's right to jury unanimity is violated only if his conviction on the basis of multiple acts prejudiced the defendant by creating the genuine possibility that the conviction occurred as the result of different jurors concluding that the defendant committed different acts. See, e.g., *United States* v. *Sturdivant*, supra, 244 F.3d 75; *United States* v. *Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981). Thus, under this test, the trial court's failure to grant a defendant's request for a bill of particulars or a specific unanimity instruction to cure this duplicity does not mean that the duplicitous count necessarily violates the defendant's right to jury unanimity. A constitutional error arises only if the duplicitous count prejudices the defendant. As we will explain in part I C of this opinion, we do not adopt the Second Circuit's test for claims of unanimity as to instances of conduct.

[16] The defendant argues that a trial court's failure to give a specific unanimity instruction when a single count is premised on multiple, separate

instances of conduct constitutes structural error, regardless of prejudice to the defendant. The defendant's position, however, conflicts with the test established by the federal courts of appeals for constitutional claims. Additionally, our appellate courts have never applied structural error to unanimity claims. Accordingly, we reject the defendant's argument.

[17] As one federal court of appeals has stated: "The risks of serious unfairness presented by a duplicitous indictment are apparent. In conditions where jurors disagree among themselves as to just which offenses the evidence supports, the defendant may nevertheless wind up convicted because the jurors agree that the evidence showed that he had committed an offense, even if it was ambiguous as to which one. . . . In other words, although a jury may return a guilty verdict even if the jurors disagree about how a specific crime was committed, this is quite different from allowing a jury to return a guilty verdict when they disagree even as to which crime or crimes were committed. . . . [T]he lack of a unanimity instruction [under these circumstances] could cover up wide disagreement among the jurors about just what the defendant did, or did not, do." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *United States* v. *Newell*, supra, 658 F.3d 27.

[18] In declining to adopt the test used by the Second Circuit, we assume that the concurrence accurately has recited it. In arguing that the Second Circuit has adopted this presumption, the concurrence relies on *United States* v. *Margiotta*, supra, 646 F.2d 729. Contrary to the concurrence's assertion, in holding that a duplicitous count—a single count of mail fraud based on multiple, separate acts—created no risk of a nonunanimous verdict, the court explained that this "risk [was] slight in a case . . . [in which] the essence of the alleged wrong is the single *scheme* to defraud . . . ." (Emphasis added.) Id., 733. In other words, the court relied on the language of the federal mail fraud statute, which specifically criminalizes "any scheme . . . to defraud . . . ." 18 U.S.C. § 1341 (1976). Thus, the holding in *Margiotta* was premised on the fact that the statute specifically contemplated criminalizing a "scheme" of activity, rather than only a single act. Moreover, the court in *Margiotta* never mentions prosecutorial discretion or any kind of presumption.

Nevertheless, the concurrence is correct that the Second Circuit, in at least one case, has held that *Margiotta* created a " 'general rule' "; (emphasis omitted); that a single count may be premised on multiple acts if the acts constitute " 'a single scheme,' " regardless of whether the statute actually criminalizes a scheme or a continuing course of conduct, and thus no duplicity or unanimity issue arises. See *United States* v. *Moloney*, 287 F.3d 236, 240 (2d Cir.) (acknowledging "general rule" that, unless explicitly prohibited by legislature, "criminal charges may aggregate multiple individual actions that otherwise could be charged as discrete offenses as long as all of the actions are part of 'a single scheme' "), cert. denied, 537 U.S. 951, 123 S. Ct. 416, 154 L. Ed. 2d 297 (2002).

[19] The concurrence cites to cases from the United States Courts of Appeals for the Fourth, Sixth and Seventh Circuits in an attempt to show that the Second Circuit is not an outlier in adopting a presumption in favor of affording prosecutors discretion in charging a crime based on a single act or on a continuous course of conduct when the statutory language and legislative history are silent regarding whether a crime may be charged as a single act, a continuous course of conduct, or both. See footnotes 4 and 25 of the concurring opinion; see also *United States* v. *Kamalu*, supra, 298 Fed. Appx. 254; *United States* v. *Davis*, supra, 471 F.3d 790–91; *United States* v. *Alsobrook*, supra, 620 F.2d 142; *United States* v. *Tanner*, supra, 471 F.2d 138. In none of these cases, however, did the courts mention, let alone apply, a presumption affording prosecutors discretion in the event of legislative silence regarding whether the statute criminalized a continuous course of conduct, a single act, or both. Rather, the holdings of most of these cases relied on the plain language of the statutes at issue.

The concurrence is correct, however, that the court in *Tanner* noted that the prosecutor had discretion in that case. But the concurrence takes this statement out of context. The court stated this only after noting the broad language of the statute at issue: "The prohibited conduct is described in 18 U.S.C. § 837 [1964] as the act of transporting explosives in interstate commerce for the purpose of destroying any building or other real or personal property. Differentiating single offenses under this section requires defining at what point the act of transporting explosives is completed." *United States* v. *Tanner*, supra, 471 F.2d 138. The Seventh Circuit held that prosecutors had discretion in making this determination because "[t]he act of transporting explosives" could be defined to include both a single incident and a continuous course of conduct. Id., 139. Thus, *Tanner* does not support the concur-

rence's argument that a presumption in favor of prosecutorial discretion should apply if the statute is silent in this regard.

Similarly, the concurrence is correct that the court in *Alsobrook* stated that "[t]he determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that must be left at least initially to the discretion of the prosecution." *United States* v. *Alsobrook*, supra, 620 F.2d 142. The court, however, immediately followed this statement by stating that "[t]his discretion . . . is not without limits"; id.; with a citation to *United States* v. *Tanner*, supra, 471 F.2d 128, which, as discussed, examined the statutory language in determining that the prosecutor could charge a crime as a continuing course of conduct.

Finally, we note that *United States* v. *Kamalu*, supra, 298 Fed. Appx. 254, does not support the concurrence's proposed test. Rather than apply the concurrence's test, the Fourth Circuit held that the government had improperly charged the defendant with a duplicitous single count "despite the allegation of a continuing scheme . . . ." Id. The court, however, held that this duplicity was not prejudicial. Id.

[20] This court has limited the scope of the legislative acquiescence doctrine. For example, this court has explained that the doctrine applies to decisions of the appellate courts but not to unofficially reported trial court decisions. See *Chestnut Point Realty, LLC* v. *East Windsor*, 324 Conn. 528, 544 n.9, 153 A.3d 636 (2017); see also *Mayer* v. *Historic District Commission*, 325 Conn. 765, 778, 160 A.3d 333 (2017) (under doctrine of legislative acquiescence, court "may infer that the failure of the legislature to take corrective action within a reasonable period of time following a definitive judicial interpretation of a statute signals legislative agreement with that interpretation" (internal quotation marks omitted)). Although this court has not been explicitly asked to determine if this doctrine applies to parties' litigation practices or the practices of constitutional officers, including prosecutors, we have held that this doctrine does not extend "to presume the legislature's awareness of municipal legislation that has not been subjected to judicial scrutiny and that may vary in form among municipalities," such as zoning regulations. *Kuchta* v. *Arisian*, 329 Conn. 530, 547, 187 A.3d 408 (2018).

[21] General Statutes (1902 Rev.) § 1331 provides: "Every person who overdrives, drives when overloaded, overworks, tortures, deprives of necessary sustenance, mutilates, or cruelly beats, or kills, any animal, or causes it to be done; and every person who, having the charge or custody of any such animal, inflicts unnecessary cruelty upon it, or unnecessarily fails to provide it with proper food, drink, or protection from the weather, or who cruelly abandons it, or carries it in an unnecessarily cruel manner, shall be fined not more than two hundred and fifty dollars, or imprisoned not more than one year, or both."

[22] Adopting the concurrence's presumption that, in the event of the legislature's silence, prosecutors may choose to charge a course of conduct in their discretion might impact policies the legislature has already considered, including those involving sexual assault. For example, in 2019, the legislature extended the statute of limitations for sexual assault in which the victim was age twenty-one or older from five years to twenty years, and abolished the statute of limitations for sexual assault in which the victim was a minor at the time of the offense. See Public Acts 2019, No. 19-16, § 17, codified at General Statutes (Supp. 2020) § 54-193 (a) (1) (B) and (b). At the time the legislature made this policy decision, our case law was clear that sexual assault is a single act crime, not a continuous course of conduct crime. See *State* v. *Joseph V.*, 345 Conn. 516, 543–44 n.12,     A.3d     (2022). Allegations of a continuous course of conduct can operate to toll the statute of limitations or, as a practical matter, reach back and capture acts beyond the statute of limitations. See 1 C. Torcia, Wharton's Criminal Law (15th Ed. 1993) § 92, p. 631 ("A statutory period of limitation begins to run on the day after the offense is committed. An offense is deemed committed when every element thereof has occurred or, if the offense is based [on] a continuing course of conduct, when the course of conduct is terminated." (Footnote omitted.)). If the legislature had thought that the concurrence's proposed presumption would become the law, it might have considered that in establishing a statute of limitations.

[23] In *Ceballos*, the defendant argued that we should follow case law from other states requiring the jury to agree on the underlying act when determining if the defendant was guilty of each count charged. *State* v. *Ceballos*, supra, 266 Conn. 420–21 n.55. We rejected this argument on the ground that these precedents conflicted with the federal test announced in *Gipson*,

which this court had adopted without considering any federal precedent on this issue. Id., 421 n.55.

[24] The Appellate Court even has suggested that unanimity concerns arise only when a single count is premised on multiple statutes, statutory subsections, or statutory clauses, not when a single count is premised on multiple instances of conduct, each of which could establish a violation of a single statute, statutory subsection, or statutory clause. See *State* v. *Mancinone*, supra, 15 Conn. App. 276–77; see also *State* v. *Joseph V.*, 196 Conn. App. 712, 740, 230 A.3d 664 (2020) (requirement that court give jury specific unanimity charge "comes down to whether the defendant's criminal liability for each offense was premised on his having violated one of multiple statutory subsections"), rev'd in part, 345 Conn. 516, A.3d (2022); *State* v. *Douglas C.*, supra, 195 Conn. App. 747, 752 (unanimity instruction is necessary only if count of information at issue is based on multiple, factual allegations that amount to multiple statutory subsections or multiple statutory elements of offense). This court has not addressed this issue. See *State* v. *Spigarolo*, supra, 210 Conn. 391 ("[w]e need not determine whether *Mancinone*'s primary analysis of the unanimity requirement is correct")."

[25] Although § 53a-65 (8) has been amended since the defendant's commission of the crimes that formed the basis of his conviction; see Public Acts 2006, No. 06-11, § 1; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-65 (8).

[26] The concurrence asserts that, in *Hauck*, this court presumed that the prosecution had discretion in the absence of specific language permitting or prohibiting the charging of a crime as a continuing course of conduct because the court in that case did not rely on the statutory language but on only policy rationales in holding that risk of injury may be charged as a continuing course of conduct crime. It is true that the analysis in *Hauck* is very short and does not specifically address the language of the risk of injury statute. Neither does the court in *Hauck* refer to a presumption in favor of prosecutorial discretion, however. All that this court said in that case was that "[t]he offenses charged here were obviously of a continuing nature and it would have been virtually impossible to provide the many specific dates [on] which the acts constituting the offenses occurred." *State* v. *Hauck*, supra, 172 Conn. 150.

It is important to note that, in *Hauck*, the applicable risk of injury statute criminalized sexual contact as both an act and a situation. See General Statutes (Rev. to 1972) § 53-21. A situation can certainly involve a continuing course of conduct. This is supported by case law that followed *Hauck*, in which this court held that a single count of risk of injury to a child under the situation prong premised on ongoing sexual contact could be charged as a continuing course of conduct. See *State* v. *Spigarolo*, supra, 210 Conn. 383–84, 391–92. Thus, to the extent *Hauck* was ambiguous regarding its reliance on the language of the statute, subsequent case law clarifies that a continuing course of conduct is contemplated by the statutory term "situation." See, e.g., id.; see also *State* v. *Payne*, 240 Conn. 766, 775, 695 A.2d 525 (1997) (citing *State* v. *Velez*, 17 Conn. App. 186, 198–99, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989), in which court determined that sexual activity with children created situation that was likely to be harmful to their physical, moral, and emotional well-being).

[27] This statement does not show that the legislature intended to alter the substance of the statute but, rather, that it intended to separate sexual and nonsexual contact. The fact that this amendment allows the new subdivision pertaining to sexual contact to be classified as a sex offender crime does not indicate that the substance of the crime itself was altered.

Nevertheless, the concurrence contends that the legislature intended to create a " 'new' " risk of injury statute regarding sexual contact, and thus our prior case law should not apply, because, in two instances in the legislative history, Senator Thomas F. Upson referred to the risk of injury statute as "new . . . ." See 38 S. Proc., Pt. 5, 1995 Sess., p. 1766, remarks of Senator Upson ("[b]ecause while the original bill talks about a new risk-of-injury statute, risk of injury by having contact with the intimate parts of a child under sixteen, becomes a [c]lass C felony"); id., p. 1777, remarks of Senator Upson ("[f]irst of all, it creates a new crime, risk of injury, explained a little earlier, by having contact with the intimate parts of a child under sixteen, in a sexual and indecent manner, likely to impair the health or morals of the child"). The concurrence cherry-picks the term "new" out of these quotations without reference to the broader context. As explained, the

legislative history makes clear that a "new" crime was created solely to distinguish sexual contact and nonsexual contact. Nothing in the legislative history manifested a legislative intent to otherwise alter the substance of the crime itself. The "change in the definition of risk of injury" was limited to the distinction between sexual and nonsexual contact, as Senator Looney immediately clarified. See 38 S. Proc., supra, p. 1769, remarks of Senator Looney ("what the first part of the bill deals with [is] the change in the definition of risk of injury to a minor, and we have a, separating into sections that deal with a, a sexual component, and a [nonsexual] component").